Number 14-1244, Mr. Crowley and Mr. Vanella. Vanella. We have you ready, Mr. Crowley. Thank you, Mr. Crowley. I came here this morning lacking the primary requirement for oral argument. I woke up with only this remnant of my voice. That's okay. We can still hear you. Are you associated with Mr. Gross? He selected me to come and present this argument, yes, because he could not. Because you're not on the brief, are you? I'm not on the brief. He could make it. The other attorney, Mr. Bachman, is no longer living. No, he died. I read about it. Yes. Do you wish to reserve time for rebuttal? No. I've asked to reserve two minutes. Thank you. And for the record, just a note, it's Noel C. Crowley. What discovery did Ms. Chavarriaga request that wasn't received? I don't understand if there was any general discovery. In response to the motion, a grant could be owed to the magistrate for a very limited discovery of the ones who took the depositions of the clients whose affidavits were presented in support of the defendant's motion. And so we don't understand that there was any general discovery. And that seems to me to augur well for the protest. Much of the argument here that we're having to deal with is that we haven't been able to show evidence. We haven't been able to show with particularity. It's interesting, though, that you say there was no discovery, but you actually moved for summary judgment. There was a cross-motion for summary judgment. If you move for summary judgment, aren't you saying that the record is adequate and sufficient for the case to be disposed of by summary judgment? Yeah, after discovery. That would be the normal inference one would draw. But the parties went on record that they didn't have discovery and confronted with this situation here. But you asked for the court to dispose of the case on summary judgment. Yes, but I think some understanding has to be given to the fact that the appeals for discovery were not fulfilled and confronted with the practical necessity for moving ahead, a decision was made to cross-move for summary judgment. It was, I think, a narrowly drawn, wasn't it, comprehensive motion for judgment in all respects. You have a claim against, I believe, Commissioner Lanigan? Yes. And your claim, it's based on a letter that you sent to him, advising him of the circumstances that your client, Chavarriaga, was being exposed to? That letter was sent, yes. And this was made out of the fact that it was sent after the various events on which this application is primarily based. And so I should not want the court to suppose that that's the primary ground on which we're trying to show that. But did most of the events occur after the letter was sent? That was the point I was trying to make here, yes. Right, right. And so do you take issue with the district judge's decision to grant judgment in his favor and let him out of the case? Yes, we do. Well, what's the hook for Mr. Lanigan? I think it's this, and I think this is probably the most important contribution I have. If I have an important contribution, this would be it. Our call with the position taken in opposition to the present appeal, both the lower court and our adversaries on appeal, examine the various incidents that have been cited as cruel and inhumane treatment of our client. Examine them in isolation. Examine them seriatim. Have not connected them, and they are connectable. They are, we maintain, they are. Right now, do you have anything linking him to any civil rights violations? And you might speak as regard to Mr. Attorney General's CSA as well. I think I should not have to do more than show that we had some basis for naming him as a defendant in the case. And I would go to what's probably the least horrifying of the various incidents, and that's the transfer of our client from one place of imprisonment to another. Do you say that these two individuals are directly responsible for civil rights violations of your client? That's what I'm leading up to here, Your Honor. And it's that there was this curious omission and neglect to do any paperwork when our client was moved from one place to another and apparently moved repeatedly from one place to another. And the primary obligation of the prison system is to maintain the prisoners in a state of confinement. They created a situation here by neglecting the paperwork where nobody could know where our client was or whether she was even still in custody. Do you think the Attorney General of New Jersey was responsible for that? No. I think that it should have and we can reasonably draw the inference that it would have come to his attention because it was an egregious breach of protocol going to the heart of what it is that prisons are all about. It's supposed to maintain people in custody, and here that didn't happen. I would think that given the number of people who were involved in the transportation of our client from one place to another, the fact that it happened repeatedly, I would think there should have been something approaching panic within the prison system. How could it come to pass that a prisoner that was released in a certain point of time couldn't be accounted for? No adverse consequence ensued as a result of that, but still, it was a breach of the standard policy and we think should have come to the attention and probably did come to the attention of the particular defendants that you're naming. The fact that they got a letter after the fact, obviously that can't leave the ground unless there's some independent reason for supposing that in advance of that letter they also had knowledge. What I'm saying here doesn't go to the entirety of our case. It goes to the case insofar as it concerns the two executive-level people that your Honor named, and I think that's the point there. I understand some of your court claims. Can you explain the problem with the way the State calculated Ms. Shelby Ivers' good time credits? Do you know anything about that? I understand that that is an issue. I understand that. The claim was that there was a due process violation because they refused to decide the issue of miscalculated credits, and then the claim is that she didn't exhaust her remedies throughout the State system. What is your response to that issue? I don't know what to say first. Let's go with what channels should she have gone through at the State level to claim that there were miscalculated credits? I don't have in front of me the red license that would govern that process. I don't understand that that was the primary basis on which our appeal is being resisted. Why was the district judge wrong in dismissing that claim? Apparently he accepted the representation of the defense and said they did it just for it. There isn't any problem here. There's a factual issue here. Maybe what we ought to do, why don't we get Mr. Van Alla up, and then we'll get you back on rebuttal. I do have a great many points. I was hoping to be on rebuttal. Well, you may see some of them dealt with with him, and then we'll give you a chance to deal with them on rebuttal. Thank you. I may please the court. Good afternoon, Your Honors. Daniel Van Alla on behalf of appellees Jeffrey Kiezik, Gary Lanigan, and Janice Brown. Your Honors, the district court's decision in dismissing appellant's second amendment complaint was thorough, fair, and correct to the extent that it was dismissed based on the pleadings because the district court took all fair inferences from the allegations raised in the plaintiff's complaint. On the eighth amendment claim, you've got two things. One, was there a subjective element of deliberate indifference, and two, was there a sufficiently serious deprivation? It doesn't appear that you really focused in on the first one at all, so you're assuming, in effect, that there was a deliberate indifference, but the question then becomes whether there was a sufficiently serious deprivation. Right. Certainly as to Sergeant Brown, who was the one who was directly on the present side. You've got a host of things here. Let's just start with the claim that there was a denial of drinking water for three days. How can that not be a sufficiently serious deprivation? I don't think anyone doubts that it is an unpleasant allegation. It's a harsh reality, if that is true. Most people would agree I'm among them, but the standard is, as Your Honor pointed out, whether it's sufficiently serious in the case law that the district court considered,  If there was a case of running water because of a plumbing issue, this is a case of drinking water. I mean, if somebody said to you today, Thursday, guess what, you're not going to have anything to drink at all, unless you want to drink from the toilet, between now and Sunday. You don't think that's not a sufficiently serious deprivation? It has not been found to be sufficiently serious by the other case decisions that the court has relied on. Which cases are you relying on? Williams v. Stello, the Eighth Circuit. What are the facts there? The prisoner was placed in the cell where the water was shut off. He was there for four days. He made requests for drinking water, which the officials refused to provide. This court cited that case with the approval in Banks v. Mozingo. The Eighth Circuit held that that did not rise to the level of an Eighth Amendment violation. How so? What the court has to determine is whether a fleeting deprivation of necessities don't necessarily rise to an Eighth Amendment level. Four days of lack of water, fleeting deprivation? In the eyes of the Eighth Circuit, which this court cited with approval, no.  I put the top down. That's what I wondered about this. Maybe I'm too particular. Let me ask you something. This case was decided ultimately because of a motion to dismiss. So we take the facts here as alleged by the plaintiff, even though there was all kinds of other things that went on. So what we have to do then is look at each thing. She may have a claim for this, but not for that. Correct. So it's a one-by-one, you know, time-consuming analysis. And the district court thoroughly analyzed one-by-one each of the claims and that the case decisions that the district court judge relied on addressed all of the various types of deprivations. What about a cumulative effect? In other words, you're deprived of water on all the occasions that she was sent to the prison. You are held in the cell naked and in the presence of other prisoners. And then there's this very intrusive cavity search, which was done contrary to, as I understand the allegation, contrary to prison regulations or protocol. I mean, cumulatively, hasn't she asserted significant deprivations? Not according to these cases. The Williams case, the prisoner was also without clothing for the four days. The Banks case discussed that very sort of issue where a prisoner was denied clothing and running water on several occasions, not just a certain number of days, but on. What, in your view, would be a sufficiently serious deprivation? I can't rely on the case law, Your Honor, and it's not what we have here. I see the Delis, D-E-L-I-S, case of the Sixth Circuit. The prisoner received only two-and-a-half pints of milk and one sixteen-and-one-half-ounce bottle of water over a three-day period. And the court said the plaintiff had pleaded facts which had proven what entitled him to relief or deprivation of water. Right. And there's a 1970 case from the Tenth Circuit. Dierman, D-E-A-R-M-A-N, v. Woodson, where the prisoner was deprived of food, not so much water, but food for 50.5 hours, and the holding was absent any justification. The allegations were sufficient to survive a motion to dismiss. I think part of it would depend on, although to be clear, this is not a requirement, that whether there were any related physical conditions, whether the prisoner could identify any physical or other injuries as a result. Again, I don't think that's absolutely required. Some of these cases that was indicated, or at least the court addressed, whether that is a fact or not. Certainly discomfort is not something that can just be excused away, but that's all we have here. We have the allegation that she was not provided with potable drinking water for three days. There's no showing that she didn't have other sources of liquid nourishment. Some of these cases discuss, for example, prisoners who- But she said she wasn't, so I mean- She doesn't say she was or wasn't. She had no drinking water. The claim is she's deprived of clothing. She was paraded naked before others who made comments about her. And I could go on and on. The Eighth Amendment is cruel and unusual punishment, and so if these are not cruel and unusual, or in effect deliberately indifferent with sufficiently serious deprivations, I go back to my question, what is? These aren't easy answers, Your Honor, and that's why the courts have struggled with these, and it's a very fact-sensitive case by case. There are cases on point that have held that it's not what we have here. It would have to be something of longer durations. But the problem you have here is this. This is our motion. We're taking the facts. I don't know, and none of us know, what would ever come up at trial. It may all be proven to be, you know, unsupported. Maybe somebody made it up. Somebody who knows. But we're dealing here with facts. I wanted to ask you this legal question. Do you represent the defendants who haven't been named yet? I think they're John Doe. What's the situation with that? There's an appeal here, and they've been dismissed, and I guess the appeal could be versus to them. It's sort of funny. Yeah. It's funny. All the years I've been a judge, I can't remember this question coming up. I don't represent John or Jane Doe's. I also don't represent the other named individuals other than the three that I mentioned. None of them have been served. Do you represent the state? The state was never served. The judge, Sue Esponte, dismissed the state on 11th Amendment grounds. Do you represent the Attorney General, the Commissioner, a new Brown? Sergeant Brown, correct. So I'll certainly answer any questions Your Honors may have about the claims in general. I don't represent the other defendants, so I was constrained not to make too many arguments about the judge's rulings as to those defendants. As I understand it, I don't have the specifics, but the district judge here dismissed claims that you actually had withdrawn. Is that accurate? I was not with the case in this case at the time, but I believe what happened as to Commissioner Lanigan, Your Honor, for some reason the defense wrote a letter to the court indicating that they were withdrawing their arguments as to the sufficiency of the pleadings against him with regard to his personal involvement. So normally a case, a pleading like that would stand? The pleading would stand. It would go forward. The pleading would go forward. The court dismissed Commissioner Lanigan based on summary judgment. That was not withdrawn by the defense with that letter. He expressly said, although he found, notwithstanding the defense's express withdrawal, that he didn't find that the pleading stated a claim against the commissioner, he expressly dismissed the commissioner on summary judgment. Let me ask you, there's a recent, this year, case of the Seventh Circuit called King v. McCarty. Are you familiar with it? I'm not, Your Honor. It's a case that 781 F. 3rd 889. It deals with clothing. The prisoner was strip searched and required to wear a see-through jumpsuit for several hours while he was transferred from one correctional facility to another. And the holding was that this was an Eighth Amendment violation because there was no, quote, obvious justification, close quote, for the jumpsuit. It was there to embarrass him. If that qualifies as a sufficiently serious deprivation, then isn't the situation that we have here in terms of facts significantly worse? And what is the obvious justification for having somebody with no clothing at all and then paraded from one part of the prison to another in front of others who make comments about a body? Your Honor, the Seventh Circuit's decision notwithstanding. What's the obvious justification? That's my question to you. What's the justification for doing this? You have an out. You have there can be significant ideological concerns that could balance out something like this perhaps. What are those justifications? I don't know what the record. There is no record on what it could be. But in theory, it could have been a situation where the prisoner, based on DOC policies, would not have been permitted to have clothing because she was a suicide risk. There's no evidence at all that she was a suicide risk? No, there's not. So what would be the justification here? Based on the pleadings, there would not be. If we can only accept the pleadings on their face for what they are. Then, in effect, you really have to remand it back, don't you? What would be the obvious justification for denying somebody drinking water for three days? Nothing from what's on the pleadings. But, again, the district court's focus was on the objective sufficiently serious nature of those allegations. And that's what he relied on in all those case laws, including some from this circuit. I am not going to give you water for three days. And somebody is going to say, okay, Ambrose, what's your justification for not giving this person water to drink for three days? Forget food. We're talking about water. Your Honor, no doubt if you're in prison and a prisoner makes a request for food or water, they get those denials all the time. That's not where it begins and ends. You have to look at the totality of it, how long was the actual deprivation. There may have been no legitimate reason to make the request. If it was three days, let's say 72 hours, I mean, a lot of people could die. It's possible. They'd have electrical imbalances and would cause heart issues that would lead to death. So what's the justification for not doing this? I don't know what the justification is. We're assuming that there was no justification. Our argument is that's only one of the elements that has to be shown here. The other element was not based on the case law that the district court relied on. Do you know, I can't imagine it's the luck of the draw, but she was sent to this particular prison on three separate occasions. The reason for that. But somehow she always ended up in cell 12, the one without the water. Well, I can explain a little bit, Your Honor, for your edification. First of all, as one of the Atheist corrections major, Booth, explained, because she was coming from a halfway house in South Jersey and had to be transported up to Edna Mahan Prison in Clinton, they didn't have express transportation, so any inmates who make that trip would have to stop at New Jersey State. She was placed in a cell, as the record demonstrates, or a cell in a unit that was meant for female inmates only who were in close custody situations. So that would be inmates who were serving pre-hearing detention, as she was because she was being sent back to the prison on suspicion of committing disciplinary infractions. It would also be for inmates who have to be in close custody for other reasons, such as suicide watch, temporary close custody or protective custody, which any situation where an inmate cannot be in a cell with another inmate or in direct contact with other inmates. And there's only so many cells in that unit. I don't know if it was a coincidence that she got put in the exact same cell, but as the record demonstrates, all the cells in that unit were identical in size and in layout. All right. Thank you. We'll hear back from Mr. Crowley. Thank you for allowing me to be back. There's some corrections I need to make here. Williams against Gallo. First of all, all of the cases that have been cited by the lower court involve serious cases of very obstreperous inmates, people who were doing vile, disgusting things, people presenting a danger to themselves, and actions were taken to prevent that, in one or two cases entailing removal of clothing. But Williams against Gallo, that's cited in the lower court's opinion as an instance in which the water was turned off for a space of days, not considered to be an Eighth Amendment violation. You read the actual decision, and it turns out to be a Marie Antoinette story. They took away the water, but they gave him milk. They gave him milk. Another of the cases that they cite is Sloan against Sobina, an unofficially reported case from Western District of Pennsylvania, and it's said that he is there, too, where water was shut off. So there wasn't a continuous supply of water, but he was given water. Water was restricted to every two hours, every two hours. So there's no comparability whatever between those cases and any other. And one of the other cases is a prisoner was made to consume rusty water. I don't think we know how that came to pass, whether it was intentional or not. Here, everything that's happened to our client had to have been intentional. In terms of the causes of action that you are pursuing in addition to Eighth Amendment violations, what other causes of actions are you pursuing? In other words, are you pursuing retaliation, fair claim, common law? What do you have left in your case? Do you process equal protection? The New Jersey Civil Rights Act pretty much restates what the federal statute talks about in Title 42, Section 1983. There has to be state action involving some deprivation or infringement of the constitutionally protected rights. All the other causes of action are of the same order. They're essentially restatements of the violation of or based upon the violation of the constitutional rights under the Eighth Amendment and the due process. All right. Thank you very much. Thank you. Thank you. Thank you to both counsel. We'll take the matter under advisement.